IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| William A. Roberts, | Civil Action No. 2:17-cv-01278-RMG |
| Plaintiff, | |
| v. | **ORDER and OPINION** |
| Discover Home Loans, Inc; LenderLive Network, LLC; Lee S. Demarest; and Allstate Insurance Company, | |
| Defendant. | |

This matter is before the court on Plaintiff's motion to remand. (Dkt. No. 19). For the following reasons, Plaintiff's motion to remand is DENIED.

## I. FACTUAL BACKGROUND

Plaintiff William Roberts owns a home at 794 Piccadilly Drive in Charleston, South Carolina. (Dkt. No. 1-1 at 5). Plaintiff maintained flood insurance for his home purchased through Allstate Insurance Company ("Allstate"). (Dkt. No. 1-1 at 6). On July 31, 2014, Plaintiff renewed his flood insurance policy (Dkt. No. 1-1 at 7). The policy period was set to expire on July 31, 2015. Id. LenderLive Network ("LenderLive"), the servicer of a mortgage Plaintiff took out on the home in late 2014, assumed responsibility for paying the renewal premium when it came due the following year. (Dkt. No. 1-1 at 8). This case arises from Allstate's termination of Plaintiff's flood insurance policy due to nonpayment of that premium.

1

Allstate participates in the National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act ("NFIA") of 1968. 42 U.S.C. §§ 4001, *et seq.* FEMA administers the NFIP. See 42 U.S.C. § 4011(a). Congress established the NFIP to reduce losses caused by flood damage through a uniform national policy by which flood insurance would be made available on reasonable terms and conditions. Id. Premiums collected from policy holders are deposited in the U.S. Treasury. 42 U.S.C. § 4017(d).

Within this framework, Allstate serves as a Write-Your-Own carrier ("WYO"), whereby it is allowed to issue flood insurance policies under the government program in its own name. 44 C.F.R. § 62.23. All flood insurance policies issued by WYO carriers under the WYO program must mirror the exact terms and conditions found in 44 C.F.R. Part 61, Appendix A. 44 C.F.R. §§ 61.4(b), 62.23 (c)–(d) (mandating exact terms). This policy is known as a Standard Flood Insurance Policy ("SFIP"). The SFIP provides:

> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, et seq.), and Federal common law.

(Dkt. No. 1 at 5 (citing 44 C.F.R. Pt. 61, App. A(1), Article IX).)

Standards and procedures governing the issuance and administration of SFIPs are published in FEMA's Flood Insurance Manual ("The Manual"). (Dkt. No. 32 at 13). The Manual regulates the renewal and termination of SFIPs as follows:

> [1.] The National Flood Insurance Program (NFIP) must issue a notice of expiration not less than 45 days before the expiration of the flood insurance policy by first-class mail to the owner of the property, the servicer of any loan secured by the property, and (if known) the owner of the loan.

> [2.] All parties listed on the policy declaration page (the agent/producer, insured, and any mortgagee) are to be mailed an initial Renewal Notice no less than 45 days prior to the policy expiration date.
>
> [3.] If the premium payment is not received by the insurer by the policy expiration date, a Final Notice is produced and must be sent to all parties listed on the declarations page (the agent/producer, insured, and any mortgagee). The final notice must indicate that coverage has expired and the the expired policy will be reissued with a new effective date if the premium payment is not received by the insurer within 30 days following the policy expiration date.
>
> [4.] The Final Notice to the lender must indicate that coverage will terminate if premium is not received within this 30 day period.
>
> [5.] Insurers must be able to reproduce copies of the Final Notice to the mortgagee and have processes in place to verify the date the Final Notice was mailed.

(Dkt. No. 32-2 at 2–3).

The flood insurance policy in question is an SFIP. (Dkt. No. 19 at 4). In November 2014, Plaintiff received a mortgage through Discover Home Loans ("Discover"). (Dkt. No. 1-1 at 6). Discover required Plaintiff to provide $537.96, which it held in escrow, to cover the SFIP premium for the next policy period. (Dkt. No. 1-1 at 7-8). Before that premium was due, Discover transferred the servicing of Plaintiff's loan to LenderLive, which assumed responsibility for payment of the SFIP premium. (Dkt. No. 1-1 at 8).

In early 2016, LenderLive informed Plaintiff that his SFIP had not been renewed due to nonpayment. (Dkt. No. 1-1 at 8). Despite sufficient funds in Plaintiff's escrow account, LenderLive failed to pay the premium. (Dkt. No. 1-1 at 9). Plaintiff alleges that he was forced to purchase new flood insurance at significantly greater expense. Plaintiff alleges that the most affordable SFIP available on the market in March 2016 required an annual premium of

3

$2,770.70. (Dkt. No. 1-1 at 9). Plaintiff alleges he will continue to pay the higher SFIP premium as required by his lender for the life of the loan, which he alleges is scheduled to be paid in full in 2044. (Dkt. No. 1-1 at 9).

Plaintiff filed suit against Discover Home Loans, LenderLive Network, Allstate, and Allstate agent Lee S. Demarest in the Charleston County Court of Common Pleas. Plaintiff alleges that Defendant Lenders are liable for damages due to gross negligence, negligence, negligent misrepresentation, breach of contract, breach of fiduciary duty, unfair trade practices and unjust enrichment. (Dkt. No. 1-1 at 9–14). Plaintiff alleges that Defendants Allstate and its agent Demarest are liable for damages due to negligence, gross negligence, deceptive trade practices and failure to comply with of S.C. Code Ann. §§ 38-75-1160, -1180, which requires insurers and agents to provide written notice of policy cancellation to South Carolina policyholders. (Dkt. No. 1-1 at 11–13).

Defendant Allstate removed to this Court, asserting the case turns on a federal question because terms of the SFIP are mandated by a codified federal regulation. (Dkt. No. 1 at 8–9). Plaintiff argues federal question jurisdiction does not exist because his state law claims did not implicate an important federal question, burden the federal fisc, or conflict with federal law. (Dkt. No. 19 at 9–10).

## II. LEGAL STANDARD

Title 28 U.S.C. § 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division

embracing the place where such action is pending." Removal is based on diversity of citizenship or the presentation of an important federal question. 28 U.S.C. § 1331.

A party seeking to remove a case from state to federal court bears the burden of demonstrating that jurisdiction is proper at the time it files its notice of removal. Caterpillar Inc. v. Lewis, 519 U.S. 61, 73 (1996). If federal jurisdiction is doubtful, remand is required. Mulchaey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994); See Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) (noting Congress' "clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction").

To determine whether an action presents a federal question under 28 U.S.C. § 1331, courts look to the allegations in the plaintiff's well-pleaded complaint to determine whether the action "arises under" federal law or the United States Constitution. Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9–10 (1983). When examining a complaint, a court must first discern whether federal or state law creates the cause of action. If federal law creates the case of action, there is federal question jurisdiction. Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986). In such cases, Federal courts have subject matter jurisdiction. Id. If state law creates the cause of action, federal question jurisdiction exists only when the plaintiff's "well-pleaded complaint establishes ... that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law . . . ." Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005) (quoting Christianson v. Colt. Indus. Operating Corp., 486 U.S. 800, 808 (1988)).

To establish a substantial federal question, the state law claim must "[1] necessarily raise a stated federal issue, [2] actually disputed and [3] substantial, [4] which a federal forum may

5

entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." Gunn v. Minton, 133 S. Ct. 1059, 1065 (2013) (citing Grable, 545 U.S. at 313–14). If the removing party fails to establish these elements, the removal is not justified under federal law.

## III. DISCUSSION:

### A. Plaintiff's Cause of Action Against Allstate for Negligence/Gross Negligence

Plaintiff alleges that Allstate had a duty to "notify Plaintiff that the premium for the Allstate Flood Policy had not been paid from the escrow accounts maintained by Defendant Lenders." (Dkt. No. 1-1 at 11). Plaintiff alleges Allstate's duties also included "contact[ing] Defendant Lenders when the premium for the Allstate Flood Policy was not paid." (Dkt. No. 1-1 at 12). Plaintiff asserts these duties were breached when Allstate allegedly failed to contact Plaintiff or Defendant Lenders when the SFIP premium went unpaid. (Dkt. No. 1-1 at 11). "[T]o determine whether Plaintiff's negligence claim involves a substantial federal question, the court must look to each element of the cause of action and determine whether a ruling on the claim will involve the interpretation or application of an issue of importance within the federal system." Benjamin v. S.C. Elec. & Gas Co., No. 3:16-CV-01141-JMC, 2016 WL 3180100, at *5 (D.S.C. June 8, 2016); see Gunn, 133 S. Ct. at 1066; Grable, 545 U.S. at 314.

### 1. The State Law Claim Necessarily Raises a Federal Issue

6

In South Carolina, a negligence claim requires that [1] defendant owed plaintiff a duty of care; [2] defendant breached this duty by a negligent act or omission; [3] defendant's breach was the proximate cause of plaintiff's injuries; and [4] plaintiff suffered injury or damages. Dorrell v. South Carolina Department of Transportation, 605, S.E.2d 12, 15 (S.C. 2004) (citation omitted).

Plaintiff asserts that he is owed a duty of care "based on the contracts entered into with Allstate." (Dkt. No. 1-1 at 11). Plaintiff has avoided references to federal law by failing to note that the "contracts entered into" are contracts for coverage under the SFIP. "[F]ederal common law *alone* governs the interpretation of insurance policies issued pursuant to the NFIP." Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 607 (4th Cir. 2002) (citations omitted) (emphasis in original). Plaintiff cannot avoid removal by sidestepping federal questions. Franchise Tax Bd., 463 U.S. at 22.

Additionally, Plaintiff asserts Allstate's duty arises from "the long standing relationship between Plaintiff and the Allstate Defendants." (Dkt. No. 1-1 at 11). This relationship[1] involves a party insured under a policy whose terms and conditions are set by a federal agency and a company that issues and administers that policy under the express authority of the federal government. Whether the duty arises from the SFIP contract itself or the relationship that arose

---

[1] The SFIP in question was originally issued by Allstate to Edmund and Martha Roberts in 1995. In July of 2006, Edmund and Martha Roberts endorsed the transfer of the SFIP to Plaintiff William Roberts.

7

from that contract, the SFIP and FEMA's Flood Insurance Manual establish the standard of care for WYO carriers.[2]

Assessing the merits of Plaintiff's negligence claims will require interpretation of the terms of the SFIP and the FEMA's Flood Insurance Manual, in conjunction with the relevant rules and regulations provided by the NFIA and FEMA. Therefore, federal issues are necessarily raised in the claim.

### 2. The Federal Issue is Disputed

The parties dispute whether the SFIP and the FEMA Flood Insurance Manual are applicable to Plaintiff's negligence claim. (Dkt. No. 19 at 9–10; Dkt. No. 32 at 3–4) Therefore, there is a disputed federal issue.

### 3. There is a Substantial Federal Issue

"[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit ... [t]he substantiality inquiry under Grable looks instead to the importance of the issue to the federal system as a whole." Gunn, 133 S. Ct. at 1066. A federal issue is substantial when "state adjudication would 'undermine the development of a uniform body of [federal] law[ ]' "; where the resolution of the issue has "broader significance ... for the Federal

---

[2] Constructive notice of the terms of the SFIP is imputed to parties who purchase SFIP coverage. Davis v. Nationwide Mut. Fire Ins. Co., 783 F. Supp. 2d 825, 837 (E.D. Va. 2011) See Richmond Printing LLC v. FEMA, 72 F. App'x 92, 98 (5th Cir. 2003) ("[T]he special nature of the insurance relationship ... charges the insured with the duty of understanding the terms of the SFIP so that he may deal appropriately with the government and its appointed agents."); Larmann v. State Farm Ins. Co., No. Civ. A. 03–2993, 2005 WL 357191, at *5 (E.D. La. Feb. 11, 2005) ("[T]he insured is charged with the constructive knowledge of the provisions of the SFIP 'regardless of actual knowledge of what is in the regulations or of the hardship resulting from ignorant innocence.'" (quoting Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947))).

8

Government[ ]"; or where the case presents "a nearly pure issue of law ... that could be settled once and for all," rather than a "fact-bound and situation-specific" one. Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., 29 F. Supp. 3d 808, 859–60 (E.D. La. 2014) (quoting Gunn, 133 S. Ct at 1066–67; Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 700–01 (2006)).

> When determining the substantiality of a federal issue, courts consider:
>
> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

Mikulski v. Centerior Energy Corp., 501 F.3d 555, 570 (6th Cir. 2007) (citing Empire, 547 U.S. at 700). "[A] complaint alleging breach of an SFIP satisfies § 1331 by raising a substantial federal question on its face." Newton v. Capital Assur. Co., 245 F.3d 1306, 1309 (11th Cir. 2001). See Downey v. State Farm Fire & Cas. Co., 266 F.3d 675, 681–82 (7th Cir. 2001) (insured's breach of contract claim against WYO carrier under SFIP was one in which duties or rights of United States under a federal program were at stake, so that the claim came within district court's federal question jurisdiction under § 1331). Based on this standard, a substantial federal question is presented.

### 4. Status of Federal/ State Balance in Light of Federal Issue

Federal jurisdiction over a state law claim will only lie if the federal issues at play are "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn, 133 S. Ct. at 1065. "In determining whether finding jurisdiction would disturb

9

the balance of federal and state judicial responsibilities, the Court must consider whether exercising jurisdiction would 'herald an enormous shift of traditionally state cases into federal courts.' " Bd. of Comm'rs, 29 F. Supp. 3d at 863 (quoting Grable, 545 U.S. at 319).

The SFIP stipulates that federal rules, federal regulations or federal common law govern all disputes involving the handling of a claim. This stipulation demonstrates that FEMA, under authority granted by Congress, sought to restrict the forum to federal courts. Accordingly, exercising jurisdiction in this matter will not disturb the balance of federal and state power.

**B. Plaintiff's Second Cause of Action Against Allstate for Violation of S.C. Code Ann. §§ 38-75-1160, -1180 and Third Cause of Action for Violation of the South Carolina Unfair Trade Practices Act**

Plaintiff alleges Allstate failed to comply with the requirements set forth in South Carolina Code §§ 38-75-1160, -1180 when it canceled Plaintiff's SFIP. Plaintiff further alleges that Allstate's conduct constitutes unfair and deceptive trade practices in violation of the South Carolina Unfair Trade Practices Act[3].

The SFIP clearly states that state law claims arising from the "handling" of an SFIP claim are preempted by federal law. 44 C.F.R. Pt. 61, App. A(1), Art. IX. However, Plaintiff argues his claim arises from the "procurement" of an insurance policy, and thus falls outside the scope of the SFIP. Plaintiff points to a line of Fifth Circuit cases that distinguish "policy procurement" from "claims handling." (Dkt. No. 19 at 5–7). Following Hurricane Katrina, the Fifth Circuit heard a number of cases involving the application of the SFIP and the NFIP framework. The Court held that federal law preempts state law claims involving the handling of a flood insurance

---

[3] S.C. Code Ann. §§ 39-5-10 *et seq.*

10

claim.[4] Campo v. Allstate Insurance Co., 562 F.3d 751, 754 (5th Cir. 2009). However, federal law does not preempt state law procurement-based claims. Id. at 757–58.

In Campo, an insured filed a damage claim shortly after his SFIP coverage had ended. Id. at 752. The insured received a renewal notice before the coverage lapsed, but did not pay the renewal premium. Id. However, FEMA extended the payment grace period for renewals by an additional 90 days in the aftermath of Katrina. Id. at 753. After Campo filed his claim, Allstate represented that his SFIP would cover the damage. Id. Allstate did not indicate that his premium remained delinquent or that coverage was conditioned on the timely receipt of the delinquent premium. Id. After the 90 day extended deadline passed without Campo having paid the premium, Allstate denied coverage on the grounds that no policy was effective at the time the flood damage occurred. Id. The court held that Campo's state law claim for negligent misrepresentation was related to procurement, and thus not preempted, because there was no policy in force for Allstate to "handle" at the time of the alleged misrepresentation. Id. at 756.

Under the Fifth Circuit test, claims handling is understood to entail the management of existing coverage which federal law and FEMA heavily regulate. Nash v. Harry Kelleher & Co. Inc., 2006 WL 2644960 at *3 (E.D. La., 2006) (citations omitted). The key to determining whether an interaction with an insurer falls under the "claims handling" umbrella is the status of the insured at the time of the interaction between the parties. Grissom v. Liberty Mut. Fire Ins.

---

[4] Though the Campo court uses the term "claims handling," Fifth Circuit courts have used language by which "handling" also applies to the handling of the policy under which such claims would be filed. See Nash v. Harry Kelleher & Co., 2006 WL 2644960, at *3 (E.D. La. Sept. 14, 2006) ("claims for the actual handling of NFIP policies, as opposed to claims of negligence in their procurement, present federal questions"); Landry v. State Farm Fire & Cas. Co., 428 F. Supp. 2d 531, 535 (E.D. La. 2006) ("claims for handling of an NFIP policy present federal questions because federal funds are implicated in their disposition.").

11

Co., 678 F.3d 397, 401 (5th Cir. 2012). If the individual is already covered and in the midst of a non-lapsed insurance policy, the interactions between the insurer and insured, including renewals of insurance, are "claims handling" subject to preemption. Id. Under this test, Allstate's duty to notify Plaintiff and his lenders falls under "handling," as Plaintiff was covered by an SFIP at the time he alleges Allstate owed him a duty of care.

Plaintiff does not specify what Allstate conduct allegedly violates South Carolina's Unfair Trade Practices Act. However, this Court finds it appropriate to exercise supplemental jurisdiction over Plaintiff's additional related claims.

## IV. CONCLUSION

For the forgoing reasons, the court DENIES Plaintiff's motion to remand. (Dkt. No 19).

**AND IT IS SO ORDERED.**

_____
Richard M. Gergel
United States District Court Judge

August 2, 2017
Charleston, South Carolina

12